## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALMA MORENO et al., | ) | |
| | ) | |
| Plaintiffs/Counter Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 23-cv-589 |
| | ) | |
| TITLEMAX OF VIRGINIA, et al., | ) | |
| | ) | |
| Defendants/Counter Claimants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY

NOW COMES the undersigned counsel, pursuant to LR7.2, and respectfully submit this Memorandum in support of Plaintiffs' Motion for Jurisdictional Discovery.

## STATEMENT OF THE CASE

Plaintiffs filed the North Carolina state court Complaint that initiated this particular civil action on June 9, 2023. (DN 10). TitleMax chose to remove the matter to this Court and now, months later, challenges the personal jurisdiction of this Court and opposes an order compelling arbitration (which it requested in its Answer). This is one of several companion matters that have been pending in this District for years. TitleMax previously agreed to the jurisdiction of this Court and, in several of the matters, agreed to a consent order compelling arbitration. Having now lost time and again in arbitration proceedings on the merits since the North Carolina appellate courts have decided the issues presented, Defendants now change horses and seek to have the matters dismissed for lack of personal

1

jurisdiction.

Defendants claim Plaintiffs have the burden of proof on jurisdiction for each individual Plaintiff; yet they refuse to provide the documents, as they have done in hundreds of earlier cases (See Exhibit 1 to Status Report (DN 27) as an example production), which succinctly establish the jurisdiction for each Plaintiff, namely North Carolina lien applications, lien recordings in North Carolina, payment histories showing whether the payment was made in person or from North Carolina, TitleMax's internal call logs demonstrating direct, substantive communications with each Plaintiff in North Carolina regarding the exact matters in dispute here and the repossession documents demonstrating the location where each vehicle was repossessed.

## STATEMENT OF THE FACTS

Plaintiffs are amongst the thousands of North Carolina residents who entered into car title loans with TitleMax of South Carolina, Inc. or TitleMax of Virginia, Inc. ("Title-Max") the terms of which violate North Carolina law given the extremely high interest rates (100-220+%).  In the Summer of 2022, the North Carolina Court of Appeals finally determined that North Carolina law applies to these types of claims and that these out of state loan providers are violating the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-190 as well as the North Carolina Usury Act.  TitleMax continued to defend these cases, hoping for a reversal from the North Carolina Supreme Court.  However, in April, 2023, the North Carolina Supreme Court denied Petitiond for Discretionary Review.

2

As demonstrated in the Further Status Report (DN 31, Exhibit 1) and in the long history of the companion *Goines* (19CV489) and *Nicholson* (19CV490) matters, TitleMax will not respect the arbitration process and Arbitration Awards without orders of this court. That is why an Order compelling arbitration is needed, as has been entered in the companion matters.

After four years of contentious litigation with TitleMax relying almost exclusively on its choice of law provision, the North Carolina appellate courts have now validated the decisions of those arbitrators who declined to enforce those provisions in this exact context and consistent with prior North Carolina law.[1] Further, TitleMax took its dormant commerce clause defense all the way through the Third Circuit and then to SCOTUS. *TitleMax of Delaware v. Weissmann*, No. 21-1020 (3rd Cir., January 24, 2022) It lost there too.

The relationship between Claimant and TitleMax originated from TitleMax's systematic presence in North Carolina. TitleMax cannot dispute this by hiring new employees to tell a different story based on what they have heard is the story and not based on personal knowledge. TitleMax former employees[2] themselves have admitted in sworn statements and depositions that TitleMax regularly engages in <u>discussions</u> during the opening phone call from North Carolina which included TitleMax directing a borrower to

---

[1] TitleMax and AutoMoney decided to fight these matters rather than settle them as their competitors largely did. They gambled that North Carolina's appellate courts and/or the US Supreme Court would end these matters in their favor. The gamble simply did not pay off.
[2] Importantly, these were the employees who actually worked at the stores during the relevant time unlike the Declarants & witnesses proferred by TitleMax.

3

bring his or her car and North Carolina car title to South Carolina or Virginia to complete a loan along with the discussion of a loan likely resulting from the drive. The die is then cast. TitleMax cannot undo the discussion or negotiation or solicitation (operative words from § 53-190) with a North Carolina borrower by mandating a choice of law provision after the fact or requiring that the North Carolina borrower travel out of state to digitally sign documents. It would be an absurd result indeed if a predatory lender could get around a "Loans Made Elsewhere" provision (that's the actual statute title) by insisting that a North Carolina borrower - with whom it has already dealt in North Carolina - travel else-where to sign the documents. TitleMax has on hand North Carolina lien recording appli-cations which it had each Plaintiff sign. TitleMax then took the applications into North Carolina and recorded them. It then collected payments in North Carolina via Plaintiffs' debit cards. It often repossessed cars in North Carolina as well.

Now, for the first time years later, TitleMax challenges the Jurisdiction of this Court to hear matters about these exact, systematic contacts with North Carolina. TitleMax maintains in its motion, the undersigned believes incorrectly, that each individual Plaintiff must put on evidence of TitleMax's activity in North Carolina with regard to each Plaintiff. Because TitleMax will appeal, as it does every time, to the Fourth Circuit, the plaintiffs desire to put forth a full record of each of the contacts. There is no need for even more delays with piecemeal appeals to the 4th Circuit. When the cases have gone to arbitration, each of the 100+ arbitrators have ordered TitleMax to produce: Loan Agreements, Payment Histories (which show the form of payment whether cash (in person) or digital (from NC)), Call Logs (which show calls into North Carolina), North

4

Carolina lien applications and recordings, and repossession documents for cars wrongfully taken in North Carolina. Thus, as Defendants have the documents and will have to produce them anyway, there is no downside to requiring them to produce them now so the Motion to Dismiss can be determined on the merits. If TitleMax would simply produce those documents now for each Plaintiff, as it said it would do at the Local Rule 16.1 conference, this Motion would not be necessary. TitleMax refuses to do so.

## QUESTION PRESENTED

By their motion, Plaintiffs present the following question to the Court:

Should the Court enter an order allowing jurisdictional discovery?

## ARGUMENT

Federal Rule of Civil Procedure 26(d)(1) provides this Court wide discretion in allowing discovery, broadly, or for a limited purpose such as this. Courts regularly allow jurisdictional discovery if relevant to the defendant's claimed jurisdictional defense. See *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,354-55 (1978); *Weaver v. 3m Co.*, 22-CV-116, (EDNC December 16, 2022).

Jurisdictional discovery is based, in part, on the right to discovery arising under the Federal Rules of Civil Procedure which Rule 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

5

This standard has been "liberally" construed, even in the context of jurisdictional discovery. *Hansen v. Neumueller*, 163 F.R.D. 471, 473 (D. Del. 1995) (permitting liberal discovery of any facts which are relevant, including jurisdictional facts); *see also* Theodore V.H. Mayer & Peter Sigler, Personal Jurisdiction over Foreign Defendants in the United States and England, in *Transatlantic Commercial Litigation and Arbitration* 79, 110 (John Fellas ed., 2004) ("The scope of permissible discovery is limited by the requirement of relevance, although relevance is broadly defined in the context of discovery." (citing *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)).

The requested information is narrow and designed to only relate to jurisdiction. In particular, Plaintiffs request:

  a. Copies of Loan Applications showing each Plaintiff's Address and North Carolina Drivers License;

  b. Copies of all loan agreements between the parties;

  c. Copies of all North Carolina lien applications;

  d. Copies of all lien recordings in North Carolina;

  e. Copies of all payment histories for the Plaintiffs;

  f. Copies of all documents reflecting the taking of a Plaintiff's vehicle in North Carolina;

  g. Copies of all call logs between the parties; and

  h. That Plaintiffs be entitled to take four (4) depositions on jurisdiction before January 15, 2024 to be properly noticed under the federal rules.

6

The depositions of TitleMax's employees that they will produce Declarations for are necessary given their contradictory testimony.

Doing so will give this Court, and any reviewing Court, a proper record for a determination on the merits.

## CONCLUSION

For the reasons stated herein, the Undersigned respectfully moves the Court for an Order allowing jurisdictional discovery as outlined herein.

This is the 5th day of October, 2023.

*/s/ Andrew H. Brown*
Andrew H. Brown
N.C. State Bar No. 28450
Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC 27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

7

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

/s/ Andrew H. Brown
Andrew H. Brown
N.C. State Bar No. 28450
Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

8